UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARMEN CLAVELL
LAMONACO,

                    Plaintiff,

v.                                          Case No: 6:23-cv-1326-PGB-LHP

EXPERIAN INFORMATION
SOLUTIONS, INC. and UNITED
AUTO CREDIT CORPORATION,

                    Defendants.

_____/

## ORDER

This cause is before the Court on Defendant Experian Information Solutions, Inc.'s ("**Experian**") Motion to Compel Arbitration. (Doc. 27 (the "**Motion**")). Plaintiff Carmen Clavell Lamonaco ("**Lamonaco**") responded in opposition. (Doc. 28). Experian replied and filed two Notices of Supplemental Authority. (Docs. 31–33). Upon consideration, the Motion will be denied.

## I.    BACKGROUND

Around April 18, 2023, Lamonaco got an alert that Defendant United Auto Credit Corporation ("**UAC**") posted to her Experian credit report a $26,922 auto loan—opened the previous month, she learned, by someone else with a similar first name. (Doc. 1, ¶¶ 26–30). She immediately disputed the UAC account, as well as some incorrect personal information she noticed, with the credit bureau. (*Id.* ¶¶ 32–34). Following weeks of back and forth—during which Defendants erroneously

claimed to have verified she procured the auto loan—Experian finally removed the UAC account from Lamonaco's credit report on June 2, 2023. (*Id.* ¶¶ 36–49).

A little over a month later, Lamonaco sued Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, alleging Experian failed to establish or follow reasonable procedures to assure maximum accuracy and failed to conduct a reasonable investigation of the disputed debt. (*Id.* ¶¶ 57–81). Both UAC and Experian answered the Complaint without mentioning arbitration. (Docs. 11, 18). In September 2023, the parties signed and jointly filed a case management report requesting a three-day jury trial. (Doc. 19). Lamonaco served Experian with interrogatories, which the credit bureau objected to on the grounds that the parties had an agreement to arbitrate disputes. (Doc. 28, pp.6–7).

According to Experian, Lamonaco entered into an agreement to arbitrate any disputes between them more than three years prior when she allegedly signed up for a credit monitoring service provided by ConsumerInfo.com, Inc. ("**CIC**"), which also does business as Experian Consumer Services ("**ECS**"). (Doc. 27, pp. 5–7).[1] Based only on his "review of CIC's membership enrollment data maintained in the regular course of business," a CIC executive averred Lamonaco signed up for CreditCheck Total, the company's paid credit monitoring service, on February 16, 2020, and has used the service continuously since then. (Doc. 27-1, ¶ 3). According to the executive's affidavit, users cannot complete the sign-up process without first

---

[1] Both Experian Information Systems and ECS/CIC are wholly owned subsidiaries of Experian Holdings, Inc., falling under the credit bureau's corporate umbrella.

providing their social security number and date of birth, and then clicking a "submit" button paired with a disclaimer that doing so constitutes assent to the Terms of Use, hyperlinked to a copy of the agreement. (*Id.* ¶¶ 3–5).[2]



---

[2]  Experian did not attach the enrollment data or other business records forming the basis of the executive's statements. Further, based on the screenshots, it appears users arrive at those screens while trying to obtain a copy of their credit report from Experian directly, which results in a 7-day "free" trial of CreditCheck Total that users cannot refuse and which automatically turns into a paid membership unless they cancel. (Doc. 27-1, p. 10). On May 5, 2020, Lamonaco allegedly canceled her account—or, as Mr. Williams puts it, she "downgraded her membership from a paid subscription to a free CreditWorks membership." (*Id.* at p. 3 n.1).

The Terms of Use describe an agreement between the user and "ECS," defined to include "affiliates (including, but not limited to, Experian Information Solutions, Inc.)," and contain an Arbitration Agreement. (*Id.* at pp. 30, 37–39). By assenting to the terms, users and ECS agree "to arbitrate all disputes and claims between [them] that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law" and in accordance with the AAA Commercial Rules. (*Id.* at p. 37). The Arbitration Agreement states all threshold issues are delegated to the arbitrator, including "the scope and enforceability of this arbitration provision" and "whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate." (*Id.* at p. 39). The Terms of Use cover the provision of "Services," defined to include "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), [and] the receipt of any alerts notifying [users] of changes to the information contained in [their] credit report(s)." (*Id.* at p. 37). EIS provided information in Lamonaco's credit report to CreditCheck for monitoring. (*Id.* ¶ 8).

Experian moves to compel arbitration per the Arbitration Agreement in the Terms of Use. (Doc. 27). Lamonaco responded in opposition, contesting the existence of an arbitration right and Experian's ability to assert it. (Doc. 28). With leave, Experian filed a sur-reply as well as two notices of supplemental authority. (Docs. 31–33). With briefing complete, the matter is ripe.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1–16, makes certain written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 1 & 2 define the field of arbitrable agreements and codify a federal "policy favoring arbitration" that makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (cleaned up). Sections 3 & 4 provide "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, [] § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Only a party who "is not in default in proceeding with such arbitration" may receive a stay under § 3 pending arbitration, and only a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may seek an order under § 4 compelling arbitration. 9 U.S.C. §§ 3–4. Courts cannot compel arbitration absent statutory authority under the FAA to do so. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019); *Am. Sugar Ref. Co. v. The Anaconda*, 138 F.2d 765, 766 (5th Cir. 1943), *aff'd*, 322 U.S. 42 (1944) ("The law is, and always has been, in the absence of a statute authorizing them to do so, that parties may not by private agreement oust the jurisdiction of the courts.").[3]

---

[3]   The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

A motion to compel arbitration is generally treated like a motion for summary judgment. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Initially, a moving party must attach sufficient competent evidence to factually support that the parties formed a written arbitration agreement and any other pertinent issue for which it bears the burden of proof. *Id.* The party resisting arbitration may then reply detailing factual and legal bases for why arbitration cannot be compelled. *See id.* Using "a summary judgment-like standard," a court may then decide whether an arbitration agreement exists as a matter of law if there is no genuine dispute as to any material fact about its formation. *Id.* Otherwise, "the court shall proceed summarily to the trial thereof." *Reiterman v. Abid*, 26 F.4th 1226, 1233 (11th Cir. 2022) (quoting 9 U.S.C. § 4).

## III.   DISCUSSION

When considering a motion to compel arbitration, a district court engages in a two-step inquiry. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985). First, it must determine whether the parties formed a written agreement to arbitrate the claims at issue and the terms of that agreement. *Id.* Second, it must evaluate "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014).

In this case, the Terms of Use contain an incredibly broad delegation clause essentially referring every dispute that it can legally to arbitration. Parties may clearly and unmistakably agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes, referred to as a delegation provision. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943−44 (1995). Even so, courts still retain jurisdiction over formation and arbitrability issues specific to the delegation provision, such as whether the particular provision formed or is enforceable. *Rent−A−Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Parties may layer delegation upon delegation, but the outermost shell of the resulting Russian doll will always be subject to court review of the making and performance of the contract. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). In resisting arbitration, Lamonaco argues the evidence attached in support of the Motion is insufficient to establish an arbitration agreement exists, and further claims Experian waived its purported arbitration right and is in default with proceeding with arbitration. These challenges apply to a delegation provision standing alone, and so the Court may reach their merits as applied to the delegation provision. *See Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1334−35 (11th Cir. 2016); *Steines v. Westgate Palace, L.L.C.*, 6:22-CV-629-RBD-DAB, 2022 WL 18031492, at *5 n.5 (M.D. Fla. Dec. 14, 2022).

### A.      Contract Formation

Absent an arbitration agreement, parties cannot be compelled to arbitrate their claims. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017). As such, whether the parties formed an arbitration agreement (or, as in this case, a delegation clause) is a threshold "judicial determination" not referable to arbitration. *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970) ("The propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized."). In construing arbitration agreements, courts generally apply state law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

Under Florida law, a party has a right to arbitrate where: "(1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). "The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019). To establish a contract exists, the party seeking enforcement must prove offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Clickwrap agreements are typically terms and conditions on a website that a user must assent to by clicking a button or checking a box in order

to complete a transaction, and they are generally enforceable. *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022).

Here, Experian claims Lamonaco signed up for a credit monitoring service provided by one of its affiliates and in doing so, assented to a clickwrap contract containing an arbitration agreement to which it is a party. (Doc. 27). Without expressly denying it, Lamonaco replies that Experian has not offered sufficient evidence to prove any of those claims. (Doc. 28). A party may object to any material presented in support of a motion for summary judgment, including a declaration, if it "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). In support of its motion, Experian offers an affidavit of David Williams, the CIC vice president of business governance, as well as screenshots of the credit monitoring sign up websites and copies of various versions of the terms of use. (Doc. 27-1, ¶ 1). "Plaintiff enrolled in CreditCheck Total," "Plaintiff clicked the 'Submit Secure Order' button" manifesting assent, and "Plaintiff continuously (sic) to use the service" after enrolling, he avers. (*Id.* ¶¶ 3–5). According to Lamonaco, this evidence is insufficient because Mr. Williams lacks personal knowledge of those conclusory statements and Experian did not include the business records on which he based them. The Court agrees with her.[4]

To his credit, Mr. Williams describes a general sign-up process that would appear, at first blush, to result in a binding clickwrap agreement upon completion.

---

[4]   The Court assumes without deciding that Experian is a party to the alleged arbitration agreement and would have the right to enforce it, issues which Lamonaco left unchallenged.

*See Massage Envy Franchising*, 339 So. 3d at 484.[5] Since the Terms of Use are clickwrap, Experian *must* provide evidence that Lamonaco (1) used the CreditCheck Total sign-up website, and (2) clicked a button unambiguously manifesting assent to the terms. *See Gaudreau v. My Pillow, Inc.*, 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *5 (M.D. Fla. July 1, 2022) (citing *CEFCO*, 278 So. 3d at 354). When a party relies solely on witness statements to establish those facts, the testimony must evince direct, personal knowledge of the conduct manifesting assent of the party upon whom enforcement is sought. *CEFCO*, 278 So. 3d at 354 (finding inadequate an employee's declaration attesting to the employer's "ordinary practice" without personal knowledge of the plaintiff's assent); *see also* FED. R. EVID. 602. Evidence of the defendant's "habit and practice" or what the plaintiff "would have seen" alone will not suffice. *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 919–20 (Fla. 4th DCA 2004). In *Bazemore*, the Eleventh Circuit found, under Georgia law, a company employee's declaration was "woefully inadequate" to establish assent where the employee did not profess personal knowledge that the party opposing arbitration accepted the terms of an arbitration agreement, nor did "he substantiate the claim with documentary proof." 827 F.3d at 1330–32. The court reached the result even though the plaintiff "provided almost no evidentiary support for her contention that she never entered into an arbitration agreement" since the defendant bore the

---

[5] To be clear, the Court passes absolutely no judgment on whether the sign-up process truly would result in a binding clickwrap agreement.

burden of proving the contract's existence. *Id*. Florida law dictates the same. *See CEFCO*, 278 So. 3d at 354 (adopting *Bazemore*).

By his own admission, Mr. Williams lacks personal knowledge that Lamonaco herself completed the enrollment process for CreditCheck Total at all. (Doc. 27-1, ¶¶ 3–5). He swears she enrolled based only on a "review of CIC's membership enrollment data maintained in the regular course of business," however Experian did not attach those alleged business records. (*Id.* ¶ 3). He does not describe what sort of account data CIC keeps and was available for him to review that would prove Lamonaco accessed the website—like an account bearing her personal information paired with website access logs showing her IP address, evidence she received and responded to a message to verify her account, an uncompromised credit card in her name used to make website purchases, or receipts for any transactions she initiated on the website. Nothing offered by Experian ties Lamonaco to the Terms of Use except Mr. Williams's conclusory allegations that she made and continuously used an account. "Conclusory allegations without specific supporting facts have no probative value for purposes" of a motion to compel arbitration. *Bazemore*, 827 F.3d at 1333. All of Mr. Williams's remaining statements about Lamonaco's actions manifesting assent are mere inferences that rely on her yet-to-be-proven enrollment in CreditCheck Total since "Plaintiff would not have been able to successfully enroll unless" she did them. (*Id.* ¶ 5). In other words, his testimony is all "habit and practice." *Steve Owren*, 877 So. 2d at 919–20.

Experian would have the Court believe that witness testimony from company employees about what a plaintiff "would have seen" while signing up routinely suffices to establish formation of clickwrap agreements. (Doc. 31, pp. 2–3). True, courts regularly consider such evidence to establish *how* the customer manifested assent to the company's arbitration provision, but not *whether* the plaintiff actually did so. *Compare Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70–72 (2d Cir. 2017), *with Bazemore*, 827 F.3d at 1330–32. No case in Experian's repertoire—or, more importantly, this Circuit and the state of Florida—holds witness statements describing an online enrollment process generally can alone suffice to establish the plaintiff actually went through it. *See Steve Owren*, 877 So. 2d at 919–20 (holding the opposite). In each of the numerous cases Experian cites, unlike in this one, the plaintiff had to admit to accessing the defendant's website or to signing up for an account in order to bring the cause of action, and often the witness testimony detailed (and included) specific internal data—like membership invoices or browser information—tying the plaintiff to an account. *See Tadic v. Experian Info. Sols., Inc.*, No. 1:18-CV-2911-TWT, 2019 WL 11499103, at *1 (N.D. Ga. Mar. 13, 2019) (plaintiff admitted to purchasing credit report from Experian); *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 689 (E.D. Va. 2020) (plaintiff admitted to creating a Zumper account and using the service for a claim arising from denial of a rental application); *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1226 (S.D. Fla. 2020) (plaintiff admitted to creating a Lime scooter account in bringing personal injury action against the company); *Arencibia v. AGA Serv. Co.*,

No. 21-11567, 2022 WL 1499693, at *1 (11th Cir. May 12, 2022) (plaintiff admitted to accessing website and signing insurance contract in action for false advertising); *Meyer*, 868 F.3d at 77 (plaintiff attested that he signed up for an Uber account); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 987 (N.D. Cal. 2017) (plaintiff admitted to creating Uber account in action for wrongful assessment of cancellation fees); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 831 (S.D.N.Y. 2012) (plaintiff admitted to being "an active user of facebook.com" in complaint against company for disabling his account); *Worthington v. JetSmarter, Inc.*, 18 CIV. 12113 (KPF), 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019) (plaintiffs admit to signing up for JetSmarter memberships in complaint plus company produced records of their membership invoices); *Selden v. Airbnb, Inc.*, 16-CV-00933 (CRC), 2016 WL 6476934, at *1 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) (plaintiff admitted to creating an Airbnb account in racial discrimination lawsuit). When a plaintiff's claims actually arise from the use of a service or the arbitration clause's container contract, the issue of whether the plaintiff signed up for the service understandably does not come up. But where, as here, the claims have no nexus to the services Experian's affiliate allegedly provided Lamonaco, the credit bureau must put forth facts showing her manifestation of assent into evidence to prove formation. *CEFCO*, 278 So. 3d at 354. It failed to do so.

 As a consequence, this action must stay in court. A party who "lose[s] a motion to compel arbitration for failure to prove that an arbitration agreement exists" will not be "afforded a second bite at the apple—an opportunity to prove the

agreement's existence at trial." *Bazemore*, 827 F.3d at 1333. Just like with any other contract on summary judgment, Experian had one shot to makes its case for formation and enforceability of the arbitration clause. *Id*. Since it did not do so sufficiently, the Motion (Doc. 27) shall be denied.

### B.   Statutory Authority and Waiver

Even if there were evidence the parties formed an arbitration agreement, Experian is in default in proceeding with arbitration and so waived its right to arbitrate. An agreement to arbitrate, just like any other contract, may be waived. *See e.g.*, *Burton–Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 407 (5th Cir. 1971). Section 3 of the FAA bars courts from granting a stay of litigation pending arbitration to a party "in default with proceeding with such arbitration," which the Eleventh Circuit has said includes waiver. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n.17 (11th Cir. 2002) (citing *Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1365–66 n.16 (11th Cir. 1995). Waiver is either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of the relinquishment of a known right. *Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989) (citing Florida law). Default or waiver occurs "if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1369 (11th Cir. 2023). Fair notice of a party's intent to arbitrate at an early stage of litigation "is a primary

factor in considering whether a party has acted consistently with its arbitration rights." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).

Here, Experian first argues that the issue of waiver must be resolved in arbitration, not open court. (Doc. 31, pp. 5–6). One version of the Terms of Use does expressly delegate the issue of "whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate" to the arbitrator. (Doc. 27-1, p. 39). "The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum" to resolve it. *New Prime*, 139 S. Ct. at 537–38; *see also Mike Bradford & Co. v. Gulf States Steel Co.*, 184 So. 2d 911, 912 (Fla. 3d DCA 1966) (holding parties "may not, by their contract totally exclude the courts from a consideration of their dispute under every circumstance which may possibly arise"). First, the "default" language of § 3 "would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 3 (1st Cir. 2005); *see also Pre-paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1296 (10th Cir. 2015). More importantly, the Eleventh Circuit holds "questions of waiver based on a party's litigation conduct are for the courts to resolve." *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1354 (11th Cir. 2011). That is because active participation in the litigation is as inconsistent with an intent to have the arbitrator decide threshold arbitrability issues as it is an intent to arbitrate the substantive merits. *Johnson v. Key Bank Nat'l Ass'n*, 754

F.3d 1290, 1295 (11th Cir. 2014) (finding party waived the right to arbitrate gateway issues by participating in litigation); *Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269 (11th Cir. 2012) (same); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224, 1228 (11th Cir.2012) (same); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir.2011) (same). Also, courts do not enforce other contract rights that may have been waived. *See Grigsby*, 664 F.3d at 1354; *Henry Schein*, 139 S. Ct. at 530. For instance, a court does not transfer a case pursuant to a forum-selection clause for the other court to decide if a party waived that provision. *See Chmura v. Monaco Coach Corp.*, 8:04-CV-2054-T24MAP, 2005 WL 1705469, at *2 (M.D. Fla. July 19, 2005).

That being the case, Lamonaco asserts Experian waived arbitration by, among other things, filing an answer to its complaint omitting any mention of arbitration—bringing it up for the first time in response to interrogatories after participating in the case planning conference. (Doc. 28). Experian counters that, as a matter of federal law, it has not participated in the litigation substantially enough to have waived its arbitration right. (Doc. 31, pp. 7–9). The law in this area is undergoing a course correction. *Gaudreau*, 2022 WL 3098950, at *5–7. Historically, the Eleventh Circuit held waiver of arbitration required a showing of prejudice to the party opposing arbitration in addition to satisfying the totality of the circumstances test. *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *abrogated by Sundance*, 596 U.S. 411. *But see Air Prods. & Chems.*, 867 F.2d at 1379 ("Waiver is established by examining only the

actions and intent of the party charged with waiver, and not the party asserting the defense."). Since then, the Supreme Court unanimously stripped the waiver test of its prejudice requirement and admonished courts for "invent[ing] special, arbitration-preferring procedural rules" by invoking the FAA's "policy favoring arbitration," abrogating much—if not most—of this Circuit's precedent on the issue. *See Sundance*, 596 U.S. at 418; *Gaudreau*, 2022 WL 3098950, at *5 (examining the fallout from *Sundance*). For example, previous precedent placed "a heavy burden of proof" on any party asserting waiver of arbitration "because federal law favors arbitration." *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982).[6] Additionally due to the prejudice requirement, waiver of arbitration would be found "when the party seeking arbitration substantially invokes the judicial process," whereas mere "active participation" in the litigation would suffice for other, similar contract rights. *See Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) (observing that a party's "active participation" is inconsistent with an intent to arbitrate but "[s]ubstantially invoking the litigation machinery qualifies as the kind of prejudice

---

[6]   It is unclear how or why the Eleventh Circuit formed and adopted this rule. The rule's roots lie in a *General Guaranty Ins. Co.* footnote making the off-hand remark, "Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver." 427 F.2d at 929 n.5 (citing *Hilti, Inc. v. Oldach*, 392 F.2d 368 (1st Cir. 1968)). Referencing that footnote, the former Fifth Circuit next morphed it into a rule: "The burden on one seeking to prove a waiver of arbitration is a heavy one." *Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir. 1976), *cert. denied*, 434 U.S. 824 (1977). After that, the Eleventh Circuit inexplicably restated the rule as follows: "Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Belke*, 693 F.2d at 1025. From there, courts in this Circuit adopted the rule as a heightened evidentiary burden. *E.g.*, *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990).

. . . that is the essence of waiver"). Following *Sundance*, neither of these heightened standards is permissible. *Gaudreau*, 2022 WL 3098950, at *5; *see also Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1016 (9th Cir. 2023). Accordingly, the Eleventh Circuit now articulates only the "totality of the circumstances" test for inconsistent action, with no other caveats. *See Bedgood*, 88 F.4th at 1369 (quoting *Ivax*, 286 F.3d at 1315–16); *cf. Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (holding a single sentence in a Supreme Court decision articulated a new legal standard without mentioning or expressly overruling the original).

Turning back to the present case, Experian advances that waiver of arbitration is still governed by federal law (meaning state law cases are irrelevant) and occurs *only* when a party substantially participates in the litigation. (Doc. 31, p. 7). The Eleventh Circuit has generally resolved cases like this one as a matter of federal law, using the terminology of waiver. *See S & H Contractors*, 906 F.2d at 1514. In *Sundance*, the Supreme Court assumed without deciding that it is correct to do so—albeit while emphasizing "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." 596 U.S. at 418. When developing a federal rule, displacement of state law will occur only where a "significant conflict" exists between an identifiable "federal policy or interest and the operation of state law" or the application of state law would "frustrate specific objectives" of federal legislation. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (cleaned up). As such, "state law [] is applicable to determine which contracts are binding under § 2 and enforceable under § 3 [of the

FAA] 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)). For contracts generally, the Eleventh Circuit routinely applies the state law standard where waiver is concerned. *Burton-Dixie Corp.*, 436 F.2d at 408 (affirming state law standard as appropriate jury instruction on waiver of arbitration agreement); *Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 350 (5th Cir. 1978) (applying Mississippi law for waiver of arbitration and appraisal); *Weisbart & Co. v. First Nat. Bank of Dalhart*, 568 F.2d 391, 396 (5th Cir. 1978) (applying Texas standard for waiver of security interest in cattle under sales contract); *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982); *Hough*, 672 F.3d at 1228 (applying Georgia law for waiver of arbitration). Accordingly, for Florida contracts, "the waiver issue is governed by Florida law." *Air Prods. & Chems.*, 867 F.2d at 1379. Given *Sundance*'s edict to treat arbitration contracts like all others, the Court must, at the very least, consult any generally applicable state law standard. *Gaudreau*, 2022 WL 3098950, at *7.

Florida law articulates the same totality of the circumstances test for waiver as the Eleventh Circuit. *See Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). The party asserting waiver has the burden of proof. *O'Brien v. O'Brien*, 424 So. 2d 970, 971 (Fla. 3rd DCA 1983). "[A] party's contract rights may be waived by actually participating in a lawsuit or taking action inconsistent with that right." *Raymond James*, 896 So. 2d at 711; *see also Miller Brewing*, 781

F.2d at 497. Courts have found active participation in cases where a defendant takes actions other than initially challenging the plaintiff's right to a judicial remedy in the first place. *Estate of Williams ex rel. Williams v. Manor Care of Dunedin, Inc.*, 923 So. 2d 615, 617 (Fla. 2d DCA 2006).[7] It is well settled under Florida law that by "filing an answer to a pleading seeking affirmative relief without raising the right to arbitration," a defendant acts inconsistently with an intent to arbitrate and actively participates enough to effect waiver. *Id.*[8]

And here, Experian filed an answer with no mention of arbitration months before seeking to compel it. (Doc. 11). Per Florida law, that is enough. *Estate of Williams*, 923 So. 2d at 617. Yet that is not all. (Doc. 28, pp. 5–7). Around the middle of September 2023, Experian participated in the case planning conference, signing and jointly submitting a Case Management Report asking for a three-day jury trial. (Doc. 19, p. 2). In its description of the case accompanying the report,

---

[7] Waiver in this regard "does not depend on timing of the motion to compel arbitration (where not unreasonably delayed), but rather on the prior taking of an inconsistent position by the party moving therefor." *Ojus Indus., Inc. v. Mann*, 221 So. 2d 780, 782 (Fla. 3d DCA 1969).

[8] *See also Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687 (Fla. 2d DCA 2009); *Price v. Fax Recovery Sys., Inc.*, 49 So. 3d 835, 837 (Fla. 4th DCA 2010); *Bland v. Green Acres Group, L.L.C.*, 12 So. 3d 822, 824 (Fla. 4th DCA 2009); *Mora v. Abraham Chevrolet-Tampa, Inc.*, 913 So. 2d 32, 34 (Fla. 2d DCA 2005); *Marine Env't Partners, Inc. v. Johnson*, 863 So. 2d 423, 427 (Fla. 4th DCA 2003) ("Where a party defends on the merits by answering the complaint without demanding arbitration, a waiver is deemed to have occurred."); *Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co., Inc.*, 824 So. 2d 288, 290 (Fla. 4th DCA 2002); *Breckenridge v. Farber*, 640 So.2d 208 (Fla. 4th DCA 1994); *Bared & Co., Inc. v. Specialty Maint. & Const., Inc.*, 610 So. 2d 1, 3 (Fla. 2d DCA 1992); *Onkar S. Narula, M.D., P.A. v. Cardiac Diagnostic Serv., Ltd.*, 474 So. 2d 1278, 1279 (Fla. 3d DCA 1985); *Riverfront Props., Ltd. v. Max Factor III*, 460 So.2d 948 (Fla. 2d DCA 1984); *Transamerica Ins. Co. v. Weed*, 420 So. 2d 370, 372 (Fla. 1st DCA 1982); *Hansen v. Dean Witter Reynolds, Inc.*, 408 So. 2d 658, 659 (Fla. 3d DCA 1981); *Lapidus v. Arlen Beach Condo. Ass'n*, 394 So. 2d 1102, 1103 (Fla. 3d DCA 1981); *King v. Thompson & McKinnon, Auchincloss, Kohlmeyer, Inc.*, 352 So. 2d 1235, 1235 (Fla. 4th DCA 1977).

the credit bureau "readopt[ed] and reallege[d] its affirmative defenses from the Answer and Affirmative Defenses filed in response to Plaintiff's Complaint as if fully set forth herein" and reserved its right to bring claims against Lamonaco "in this action." (*Id.* at p. 3). A party intending to arbitrate would not *request a jury trial* and allege its affirmative defenses *twice* to a court it believes will not hear them. *See Soriano v. Experian Info. Sols., Inc.*, 2:22-CV-197-SPC-KCD, 2022 WL 6734860, at *3 (M.D. Fla. Oct. 11, 2022), *objections overruled*, 2:22-CV-197-SPC-KCD, 2022 WL 17551786 (M.D. Fla. Dec. 9, 2022) (finding waiver where "Experian participated in a case management conference and submitted a case management report asking for a jury trial" without mentioning arbitration). Further, in its Local Rule 3.03 disclosures—which must list "each . . . subsidiary, affiliate . . . and other identifiable related legal entity that has or might have an interest in the outcome"— Experian did not include CIC/EIS, which it now claims is an affiliate that supposedly contracted with Lamonaco to control the forum and mode of resolution for this action.[9] (Doc. 13). The first time Experian ever mentioned an arbitration agreement was in response to Lamonaco's interrogatories, three months after the start of litigation. Taken together, all of these actions evidence an intent to litigate

---

[9]   Local Rule 3.03(a) requires disclosure of interested parties so that the litigants may suss out potential conflicts of interest early in the case. For purposes of the rule, a defendant's affiliate whose alleged arbitration contract with the opposing party will form the basis of a motion to compel it, and whose executives will provide testimony as to its formation, certainly has, or at least might have, an "interest in the outcome" even though it is not financial. *Cf. Chance v. Buxton*, 163 F.2d 989, 990 (5th Cir. 1947) (highlighting that parties to a contract whose enforceability is challenged have an interest in the outcome of litigation).

the claims in court to the exclusion of arbitration. [10]

Even if Florida law were irrelevant, federal law counsels in favor of requiring a defendant to raise arbitration in its first defensive move. FED. R. CIV. P. 8(c), 12(h). Under Rule 8(c), arbitration is one of the listed affirmative defenses that "must be set forth in a responsive pleading or be deemed waived." *E.g.*, *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir. 1976). Further, an arbitration agreement is just a "specialized forum-selection clause"—which is a matter of venue. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Venue is a "threshold defense," implicating neither the court's authority to act nor the substantive merits, which are "of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading." FED. R. CIV. P. 12 advisory committee's note to 1966 amendment. Likewise, "an arbitration clause is not a 'Contractual Defense' to the action's merits" and concerns the situs of suit. *Bland*, 12 So. 3d at 825; *Mitsubishi Motors Corp.*, 473 U.S. at 628 (agreeing to arbitrate a claim does not forgo substantive rights but merely submits their resolution to arbitral, not judicial, forum). Since arbitration may well be equated with venue, "it should be equally clear that the failure of a party to object at the first opportunity available to it to

---

[10] Lamonaco also faults Experian for participating in scheduling mediation. Since the Case Management and Scheduling Order (Doc. 20) requires the parties attend a mediation conference with a specified court-certified mediator by a certain date, Experian's participation in setting it up does not evidence waiver in this case. *See Gen. Guar. Ins. Co.*, 427 F.2d at 929 ("They are things which had [the defendant] failed to do the court might well have directed it to do in the interest of management of the case. [The defendant] lost no rights by doing them.")

raise the question by motion amounts to a waiver of whatever rights the party may have had." *Cf. T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1277 (5th Cir. 1980). Allowing a defendant to expend judicial resources on anything other than enforcing the parties' arbitration agreement "would be inconsistent with the salutary Congressional purposes of furthering the intent of the parties and relieving the courts of burdens" from docket congestion. *See Gen. Guar. Ins. Co.*, 427 F.2d at 928. Accordingly, the Eleventh Circuit demands "fair notice" of a party's intent to arbitrate at an "early stage of litigation." *Gutierrez*, 889 F.3d at 1236. It follows, then, that waiver occurs when a defendant proceeds past filing its answer without mentioning arbitration, absent extenuating circumstances.

In its reply, Experian does not provide the Court with any extenuating circumstance that would make its actions consistent with an intent to arbitrate. Since waiver concerns the totality of circumstances, the principles laying out what sort of conduct evinces waiver are not bright-line rules, but rebuttable presumptions. *Cf. Gen. Guar. Ins. Co.*, 427 F.2d at 929. Actions that support waiver of arbitration in one case may not in another presenting different circumstances, like where asserting arbitration earlier in the litigation would have been futile or endangered other claims. *See id.* (filing answer, counterclaim, and impleading a party did not constitute waiver where actions served to protect un-arbitrable claims); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986) (holding 15 months of participation in lawsuit did not waive arbitration where an intervening court decision made the claims arbitrable). But there are no

extenuating circumstances here that would make Experian's post-suit behavior signify anything other than an intent to proceed in court. The credit bureau does not even say now it intended to arbitrate when filing its answer, or even explain why the defense was not included in it. "Allowing such conduct would ignore the very purpose of alternative dispute resolution: saving the parties' time and money." *Gutierrez*, 889 F.3d at 1236.

Last, Experian finds no compelling (or binding) support in the law for the notion that its participation must be far more substantial to effect waiver. Contrary to what it seems to believe, "[t]here is no set rule . . . as to what constitutes a waiver or abandonment of [an] arbitration agreement," which depends upon the facts of each case. *Burton-Dixie Corp.*, 436 F.2d at 408. It does not occur, as Experian spuriously claims, "only where a party has engaged in extensive use of the litigation process, before reversing course and claiming that arbitration was the proper avenue all along." (Doc. 31, p. 7).[11] Again, a party must reveal its intent to arbitrate at an "early stage of litigation." *Gutierrez*, 889 F.3d at 1236. Plaintiffs waive arbitration simply by filing a lawsuit. *Am. Sugar Ref.*, 138 F.2d at 767 (holding plaintiff waived right to arbitration "in electing to sue without adverting to or

---

[11] For its proposition, Experian cites *Payne v. Savannah College of Art and Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023). (Doc. 31, p. 7). But *Payne* does not at all dictate a bright-line rule limiting waiver only to scenarios where a litigant has a change of heart deep into the litigation. 81 F.4th at 1201. Instead, the *Payne* court merely remarked that "[o]ur waiver doctrine is typically implicated when parties have 'invoked the litigation machinery' before reversing course." *Id.* (quoting *Gutierrez* while notably omitting the word "substantial"). As to waiver, *Payne* only holds a party did not waive arbitration "based on its actions taken in a previous legal action . . . when that party did not bring the lawsuit at bar and has repeatedly insisted that arbitration is the proper dispute resolution channel." *Id.*

declaring on the arbitration agreement"); *cf. U. S. v. Indus. Crane & Mfg. Corp.*, 492 F.2d 772, 774 (5th Cir. 1974) (government waived immunity by bringing suit). Filing an answer is not meaningfully different for purposes of waiver. Requiring arbitration be raised before or in the answer promotes "certainty of the law in the sense that the parties to litigation will know where they stand regarding issues like this at an early stage of the litigation." *Bared*, 610 So. 2d at 3. In this case, requiring more substantial participation in the litigation serves no purpose other than "fostering arbitration," which the FAA's "policy favoring arbitration" disallows, and it would encourage inefficiency and gamesmanship. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Sundance*, 596 U.S. at 418. Such is the case here.

Because the totality of the circumstances indicates Experian acted inconsistently with its arbitration right, the Court lacks statutory authority under § 3 of the FAA to stay the case pending arbitration and Experian waived its right to invoke § 4. *See Bedgood*, 88 F.4th at 1363. As "parallel devices," a party may not compel arbitration under § 4 where a prior default in proceeding with arbitration precludes that party from obtaining a stay of litigation under § 3. *See Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018). Additionally, given that the claims in this case have no nexus with the alleged container contract, the Court doubts that it has the authority to enforce the delegation clause under § 2,

which only makes valid "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration *a controversy thereafter arising out of such contract* [], or the refusal to perform the whole or any part thereof[.]" 9 U.S.C. § 2 (emphasis added); *see also New Prime*, 139 S. Ct. at 538 ("[A] court may use §§ 3 and 4 to enforce a delegation clause only if the clause appears in a 'written provision in . . . a contract evidencing a transaction involving commerce' consistent with § 2."); *Seifert*, 750 So. 2d at 638 ("[E]ven in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause."). For these reasons as well, the Motion (Doc. 27) will be denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** that Experian's Motion to Compel Arbitration (Doc. 27) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on April 19, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties